# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MARIA LAURINO, RICARDO MILLER, LOUIS BABECKI, MATTHEW CLEGG, and SASHA BAMBERG, individually and on behalf of all others similarly situated,

        Plaintiffs,

        v.

THE VALLEY HOSPITAL, BOARD OF TRUSTEES OF THE VALLEY HOSPITAL, AND THE VALLEY HOSPITAL INVESTMENT COMMITTEE,

        Defendants.

Civil Action No. 2:25-cv-15263-JXN-MAH

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... ii

I.    NEITHER *TIBBLE* NOR *HUGHES* SAVES PLAINTIFFS' CLAIMS............1

    A.    Lincoln's Retention of Spread Was Not a "Transaction."....................5

    B.    *Sweda* Vitiates Plaintiffs' Prohibited Transaction Claims....................7

    C.    Plaintiffs' Gamesmanship Has No Place In This Court. ......................8

II.   PLAINTIFFS DO NOT OVERCOME THEIR FAILURE TO PLEAD FIDUCIARY STATUS AS TO EACH DEFENDANT...................................9

III.  PLAINTIFFS' CLAIMS FAIL ON THEIR MERITS. ..................................10

    A.    Plaintiffs' Excessive Fee Claims Fail...............................................11

    B.    Plaintiffs' Claims Relative to Allegedly Underperforming Funds Fail. ...................................................................................................12

    C.    Plaintiffs' ERISA § 406(a) Allegations Are a Non-Starter..................13

IV.   CONCLUSION...................................................................................14

CERTIFICATE OF SERVICE ............................................................................16

i

# TABLE OF AUTHORITIES

## CASES

*Alas v. AT&T Inc.,*
  2019 U.S. Dist. LEXIS 46211 (C.D. Cal. Feb. 25, 2019) ...................................10

*Bishop-Bristol v. Mass. Mut. Life Ins. Co.*,
  2019 U.S. Dist. LEXIS 61903 (D. Mass. Feb. 5, 2019) .................................6, 14

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Solutions, Inc.,*
  658 Fed. Appx. 966 (11th Cir. Sept. 1, 2016) ......................................................3

*Cinecoe v. Boeing Co.,*
  2017 U.S. Dist. LEXIS 142848 (N.D. Ill. Sep. 5, 2017) .....................................4

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651(6th Cir. 2005) ...............................................................................13

*Clean Air Council v. United States Steel Corp.*,
  4 F.4th 204 (3d Cir. 2021) ...................................................................................14

*Criss v. New Jersey,*
  2010 U.S. Dist. LEXIS 11247 (D.N.J. Feb. 9, 2010) .........................................12

*Daly v. W. Monroe Partners, Inc.,*
   2023 U.S. Dist. LEXIS 43481 (N.D. Ill. Mar. 15, 2023)...................................10

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013).............................................................................2, 3

*Davis v. Wash. Univ. in St. Louis,*
  960 F.3d 478 (8th Cir. 2020)...............................................................................13

*Dole v. Formica*,
  1991 U.S. Dist. LEXIS 19743 (N.D. Ohio Sep. 30, 1991)...................................6

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 U.S. Dist. LEXIS 160112 (S.D.N.Y. Sep. 18, 2019) .................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)..............................................................................................11

*Fleming v. Rollins, Inc.*,

655 F. Supp. 3d 1243 (N.D. Ga. 2023) ...............................................................2

*Fritton v. Taylor Corp.*,
2023 U.S. Dist. LEXIS 145940 (D. Minn. Aug. 21, 2023) ...............................13

*Grink v. Virtua Health, Inc.*,
2025 U.S. Dist. LEXIS 598600 (D.N.J. Dec. 3, 2025)...................................9, 11

*Hughes v. NW Univ.*,
595 U.S. 170 (2022)......................................................................................1, 11

*Ieradi v. Mylan Lab., Inc.*,
230 F.3d 594 (3d Cir. 2000) ..............................................................................12

*In re Intelligroup Securities Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) ....................................................................12

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)..............................................................................12

*In re Pfizer, Inc. Sec. Litig.*,
538 F. Supp. 2d 621 (S.D.N.Y. 2008) ................................................................13

*John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank*,
510 U.S. 86 (1993)..............................................................................................14

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
2018 U.S. Dist. LEXIS 147746 (D.N.J. Aug. 29, 2018) ......................................1

*Kohari v. MetLife Grp., Inc.*,
2022 U.S. Dist. LEXIS 136505 (S.D.N.Y. Aug. 1, 2022) ...................................8

*Kumar v. Kulicke & Soffa Indus., Inc.*,
2019 U.S. Dist. LEXIS 175867 (E.D. Pa. Oct. 9, 2019) ...................................12

*Lowen v. Tower Asset Management, Inc.*,
829 F.2d 1209 (2d Cir. 1987)..............................................................................10

*Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
541 F. Supp. 3d 496 (D.N.J. 2020) ....................................................................10

*Mack Boring & Parts v. Meeker Sharkey Moffitt, Actuarial Consultants of N.J.*,
930 F.2d 267 (3d Cir. 1991)........................................................................ 13, 14

iii

*Mator v. Wesco Distrib., Inc.*,
   102 F.4th 172 (3d Cir. 2024)..................................................................11

*Owens v. Life Ins. Co. of N. Am.*,
   2025 U.S. Dist. LEXIS 282742 (E.D. Mo. July 16, 2025)...................................4

*Patterson v. Morgan Stanley*,
   2019 U.S. Dist. LEXIS 174832 (S.D.N.Y. Oct. 7, 2019) ..................................13

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)...........................................................................9

*Perez v. WPN Corp.*,
   2017 U.S. Dist. LEXIS 87530 (W.D. Pa. June 7, 2017)......................................9

*Peters v. Del. River Port Auth. of Pa. and N.J.*,
   16 F.3d 1346 (3d. Cir. 1994)...............................................................12

*Schultz v. Aerotech, Inc.*,
   2025 U.S. Dist. LEXIS 30145 (W.D. Pa. Feb. 20, 2025) .....................................3

*Schultz v. Texaco Inc.*,
   127 F. Supp. 2d 443 (S.D.N.Y. 2000) .......................................................4

*Seibert v. Nokia of Am. Corp.*,
   2023 U.S. Dist. LEXIS 137621 (D.N.J. Aug. 8, 2023) ......................................11

*Singh v. Deloitte LLP*,
   123 F.4th 88 (2d Cir. 2024).................................................................12

*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019)............................................................ 4, 7, 8

*Sweeney v. Nationwide Mut. Ins. Co.*,
   2026 U.S. Dist. LEXIS 26205 (S.D. Ohio Feb. 9, 2026) ............................ 4, 5, 6

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015)........................................................................1, 2

*Turner v. Allstate Ins. Co.*,
   491 F. Supp. 3d 1190, 1210 (M.D. Ala. 2020), *aff'd*, 2023 U.S. App. LEXIS
   33161 (11th Cir. Dec. 15, 2023) ...........................................................2

*Valley Hosp. v. Asquith,*
    2006 U.S. Dist. LEXIS 106177 (D.N.J. May 24, 2006).......................................9

*White v. Chevron Corp.*,
    2017 U.S. Dist. LEXIS 83474 (N.D. Cal. May 31, 2017), *aff'd*, 752 Fed. Appx.
    453 (9th Cir. Nov. 13, 2018) ...............................................................2, 4

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ...............................................................3

## STATUTES

29 U.S.C. §1002(21)(A)..................................................................................9
29 U.S.C. §1101(b)(2)...................................................................................14
29 U.S.C. §1102(c)(3)...................................................................................10
29 U.S.C. §1105(d)(1)...................................................................................10
Employee Retirement Income Security Act of 1974 (ERISA).......................... passim

## RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................3
Fed. R. Civ. P. 8............................................................................................1

## REGULATIONS

29 C.F.R. § 2509.75-8, FR-14 Q&A....................................................................10

Defendants, The Valley Hospital, Inc. ("Hospital"), the Board of Trustees of The Valley Hospital, Inc. ("Board"), and The Valley Hospital Investment Committee ("Committee") (collectively, "Defendants"), for this Reply in support of their Motion to Dismiss the Second Amended Complaint ("SAC"), state as follows:

## I.    NEITHER *TIBBLE* NOR *HUGHES* SAVES PLAINTIFFS' CLAIMS.

Plaintiffs do not dispute that their claims relative to the Stable Value Account ("SVA") and recordkeeping fees emanate from Lincoln's May 2014 issuance of the Group Annuity Contract and its January 2017 Recordkeeping Agreement with the Hospital. Instead, Plaintiffs maintain that the effective dates of these agreements are irrelevant given the continuing duty to monitor investments and recordkeeping fees respectively recognized by the Supreme Court in *Tibble v. Edison Int'l*, 575 U.S. 523 (2015) and *Hughes v. NW Univ.*, 595 U.S. 170 (2022). To the contrary, nothing in *Tibble* or *Hughes* stands for the proposition that an alleged ERISA violation that occurs within the six-year repose period saves claims that occurred *outside* that six-year period.

Plaintiffs, nevertheless, reason that Defendants[1] had the ability to cure their alleged prohibited transactions within the Class Period and suggest that, under a tortured reading of *Tibble* and *Hughes,* their failure to do so restarted the six-year

---

[1] Plaintiffs, citing *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 U.S. Dist. LEXIS 147746 (D.N.J. Aug. 29, 2018), wholly discount their improper shotgun pleading. *Kearney*, however, did not involve nor address pleading standards under Fed. R. Civ. P. 8.

repose statute. (ECF 43, p. 15.) But such argument erroneously presupposes that a continuing prohibited transaction even exists. As a matter of law, it does not because "the plain meaning of 'transaction' is that it is a point-in-time event." *White v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 83474, at *69 (N.D. Cal. May 31, 2017), *aff'd*, 752 Fed. Appx. 453 (9th Cir. Nov. 13, 2018). *Accord Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1068 (M.D. Tenn. 2018). Because "[t]he common understanding of the word 'transaction' implies that an affirmative action is required," *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013), "only the original initiation of a prohibited transaction—**not any subsequent omission or failure to correct the transaction**—gives rise to a cause of action pursuant to [ERISA § 406]." *Fleming v. Rollins, Inc.*, 655 F. Supp. 3d 1243, 1270 (N.D. Ga. 2023) (emphasis supplied). *See also Turner v. Allstate Ins. Co.*, 491 F. Supp. 3d 1190, 1210 (M.D. Ala. 2020) (plaintiff cannot avoid ERISA repose period by "simply recast[ing] their misrepresentation claim as an omission claim"), *aff'd*, 2023 U.S. App. LEXIS 33161 (11th Cir. Dec. 15, 2023).

Tibble does not hold to the contrary. In fact, *Tibble* held that the continuing duty to monitor, even when it exists, does not necessarily attach to every decision a fiduciary makes and, thus, does not always give rise to an independent claim under ERISA § 404(a). *See Tibble,* 575 U.S. at 530 ("a fiduciary *normally* has a continuing duty of some kind to monitor investments and remove imprudent ones") (emphasis

2

supplied). That is why district courts must examine "the contours" of each alleged claim to determine whether the duty at issue is continuing in nature. *Id.* at 529-30.

Here, the "contours" of Plaintiffs' claims relative to Lincoln's Group Annuity Contract and Recordkeeping Agreement, even when accepted as true solely for purposes of Fed. R. Civ. P. 12(b)(6), belie that any independent violation of ERISA occurred within six years of their filing this action. Indeed, judicially noticeable documents show that the Hospital engaged Lincoln as recordkeeper, contracted with Lincoln for the Group Annuity, and chose the SVA as a qualified default investment alternative ("QDIA") outside this six-year period. Moreover, *nothing* in the SAC supports that any changes (material or otherwise) were made to either the Group Annuity Contract or Recordkeeping Agreement within the Class Period.

At their core, then, Plaintiffs' challenges to the SVA and recordkeeping fees emanate from (rather than exist independent of) the Group Annuity and Recordkeeping Agreements executed with Lincoln, respectively, in 2014 and 2017.[2]

---

[2] *See Schultz v. Aerotech, Inc.,* 2025 U.S. Dist. LEXIS 30145, at *28-29 (W.D. Pa. Feb. 20, 2025) (no actionable transaction occurred where "Aerotech's initial decision in 2009 to pursue a 'cash only' strategy occurred beyond the limitations period and Defendants simply adhered to that strategy since that time"); *Carolinas Elec. Workers Ret. Plan v. Zenith Am. Solutions, Inc.,* 658 Fed. Appx. 966, 972 (11th Cir. Sept. 1, 2016) (§ 406 claim filed nearly 10 years after the transaction time-barred); *Alphin,* 704 F.3d at 341 (§ 404 claim challenging plan investments and fees was time-barred where, "at its core," it was "simply another challenge to the initial selection of the funds to begin with"); *Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090, 1101 (9th Cir. 2004) (decision "to continue to hold 15% of Plan assets in

The fact that Plaintiffs admit that Lincoln's Recordkeeping Agreement "relate[s] to the SVA" bolsters this conclusion. (*See* ECF 43, p. 14.) The claims then occurred outside the six-year repose period and, consequently, are time-barred. *Accord Sweda v. Univ. of Pennsylvania,* 923 F.3d 320, 339 (3d Cir. 2019); *see also Sweeney v. Nationwide Mut. Ins. Co.*, 2026 U.S. Dist. LEXIS 26205, at *45-46 (S.D. Ohio Feb. 9, 2026) (ERISA § 413(1) barred claim premised on initial decision to provide the Guaranteed Fund offered under the Annuity Contract).

In short, the six-year repose period on Plaintiffs' ERISA § 404, 405(a)(2), and 406 claims relative to the SVA and recordkeeping fees commenced and expired before this action was filed. "[T]he mere fact that the effects of a single, wrongful act continue to be felt over a period of time" does not change this conclusion. *Schultz v. Texaco Inc.,* 127 F. Supp. 2d 443, 447 (S.D.N.Y. 2000) (citations omitted); *Berger v. AXA Network LLC*, 459 F.3d 804, 816, n.16 (7th Cir. 2006).[3]

---

employer stock was not a 'transaction.'"); *Cassell,* 285 F. Supp. 3d at 1067-69 (dismissing ERISA § 406 claim based on initial recordkeeping agreement that took effect more than six years before the action); *White*, 2017 U.S. Dist. LEXIS 83474, at *69 (same); *Cinecoe v. Boeing Co.,* 2017 U.S. Dist. LEXIS 142848, *9 (N.D. Ill. Sep. 5, 2017) (failure to cure alleged breach "describe[s] one violation, not a series of continuing violations").

[3] *Owens v. Life Ins. Co. of N. Am.,* 2025 U.S. Dist. LEXIS 282742 (E.D. Mo. July 16, 2025), where the ERISA plan administrator failed to properly communicate enrollment information to a participant on long-term disability leave, does not hold otherwise. *Id.* at *9. In fact, *Owens* did not even involve an ERISA § 406 claim.

### A.    Lincoln's Retention of Spread Was Not a "Transaction."

Nevertheless, Plaintiffs argue that each time that Lincoln retained "spread" within the Class Period, a separate "transaction" under ERISA § 406 arose and, as such, a new repose period again. According to Plaintiffs, the district court in *Sweeney v. Nationwide Mut. Ins. Co.*, 2026 U.S. Dist. LEXIS 26205 (S.D. Ohio Feb. 9, 2026), which involved a similar fixed annuity general account product issued by Nationwide, "rejected similar statute of limitations arguments regarding a prohibited transaction claim[.]" (ECF 43, p. 150.) In actuality, *Sweeney* **rejected** virtually the same argument that Plaintiffs now advance in their Opposition Brief. Indeed, the district court held that ERISA's repose provision barred that claim to the extent that it was premised on the initial decision to provide the Guaranteed Fund offered under the Annuity Contract. *Id.* at *45-46.

In any event, Plaintiffs omit material facts from *Sweeney* that further render the case factually inapposite and legally irrelevant. Whereas the spread retained by Lincoln constitutes the earnings in its general account that exceed the interest rate credited to the SVA (*see* ECF 42-6), the spread in *Sweeney* consisted of "a complex set of analyses and projections" that accounted for Nationwide's deductions for default risk, investment expenses, and contract margin. 2026 U.S. Dist. LEXIS 26205, at *6-8. In addition, the fact that Lincoln earns spread solely by investing the underlying funds from the SVA in its general account means that no prohibited

5

transaction occurs by virtue of Lincoln's mere retention of spread. *Accord Bishop-Bristol v. Mass. Mut. Life Ins. Co.*, 2019 U.S. Dist. LEXIS 61903, at *13 & n.2 (D. Mass. Feb. 5, 2019). So, unlike Plaintiffs' claims here, the "contours" of the plaintiffs' claim in *Sweeney* warranted application of the continued violation doctrine.

Plaintiffs fare no better relying on *Dole v. Formica*, 1991 U.S. Dist. LEXIS 19743 (N.D. Ohio Sep. 30, 1991). The district court determined that a series of separate prohibited transactions occurred where Taft-Hartley Plan trustees, over several years, continually leased out space in a building owned by the plan to the Union for below-market rent while repeatedly paying out excessive administrative fees and an excessive salary to the plan administrator. 1991 U.S. Dist. LEXIS 19743, at *18-21. For purposes of ERISA § 413, the district court held that "each time the Funds allegedly paid the Union an excessive administrative fee, or paid Formica an excessive salary, or failed to charge the Union rent in a reasonable amount, the Funds were harmed and a new cause of action arose." *Id.* at *21.

Unlike the claims at issue in *Dole,* the alleged ERISA violations that purportedly occurred here did not arise from a series of independent actions or decisions; rather, they emanated from the same, time-barred decisions that occurred more than six years before Plaintiffs filed suit. Simply put, *Dole* does not save Plaintiffs' time-barred claims.

**B.**     *Sweda* **Vitiates Plaintiffs' Prohibited Transaction Claims.**

Even more astonishing is Plaintiffs' misreading of *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320 (3d Cir. 2019).[4] The "lock-in" agreement at issue in *Sweda* was similar to the Lincoln Alliance Program at issue here insofar as it mandated inclusion of specific stock investments and a stable fund account, and further required the Plan to use TIAA-CREF as a recordkeeper. *Id.* at 330, 335. Notably, the Third Circuit held that ERISA's repose provision barred the plaintiff's ERISA § 406 claims that emanated from the initial agreement and, in doing so, rejected that a separate transaction occurred every time fees were later paid pursuant to that agreement. *Id.* at 339. Further dooming Plaintiffs' ERISA § 406 claim, *Sweda* held that: (1) at the time it executed the recordkeeping agreement, TIAA-CREF had not yet provided services to the plan and, thus, could not be deemed a party in interest; and (2) plaintiff failed to plead intent to benefit a party in interest. *Id.* at 339-40. Suffice it to say, *Sweda* eviscerates Plaintiffs' ERISA § 406 claim in its entirety.

---

[4] According to Plaintiffs, the Third Circuit there held that "prohibited transactions occurred every time property was exchanged or services were rendered pursuant to the 'lock-in' agreement" and the subsequent transactions may be "related[,]" but are nonetheless considered separate from the initial agreement. *Id.* at 339. To the contrary, those allegations were made *by the plaintiff* in *Sweda* and *rejected* by the Court. 923 F.3d at 338-40.

## C.    Plaintiffs' Gamesmanship Has No Place In This Court.

Even though they allege in the SAC that Lincoln issued them annual disclosures summarizing the performance and fees of the challenged funds and purportedly providing meaningful benchmarks (ECF 39-1, ¶¶ 58, 112, 116, 129), Plaintiffs argue that the three-year limitations period in ERISA § 413(2) does not bar their ERISA § 404 claims challenging the performance and fees of these funds.  The reason, Plaintiffs argue, is that "*[n]othing in the SAC suggests … that they read the disclosures more than three years prior to filing.*" (ECF 43, p. 16.) (Emphasis supplied.)  That Plaintiffs do <u>not</u> deny having read the disclosures more than three years before filing suit smacks of gamesmanship. The Code of Professional Responsibility and Rule 11 demand more.[5]

As discussed more fully below, Plaintiffs, to withstand dismissal, have the burden to allege facts allowing the Court to infer that the fiduciary's process was flawed. *Sweda v. Univ. of Pa.,* 923 F.3d 320, 332 (3d Cir. 2019). They have not met their burden.[6]

---

[5] Ironically, Plaintiffs argue that receiving the Plan's annual disclosures within three years of filing suit should not render their prudence claims untimely because those documents do not provide the "underlying process" used by Plan fiduciaries in reaching their investment decisions. (ECF 43, p. 17.) **Of import, neither does the SAC.**

[6] Contrary to Plaintiffs' argument, *Kohari v. MetLife Grp., Inc.*, 2022 U.S. Dist. LEXIS 136505 (S.D.N.Y. Aug. 1, 2022) does not support the proposition that annual disclosures provide insufficient data to support an ERISA § 404 claim. (ECF 43, p.

## II.    PLAINTIFFS DO NOT OVERCOME THEIR FAILURE TO PLEAD FIDUCIARY STATUS AS TO EACH DEFENDANT.

Plaintiffs overlook that a plan fiduciary -- named or *de facto* -- is subject to ERISA § 404 <u>only</u> "to the extent" that it "perform[s] a fiduciary function[] when taking the [challenged] action[.]" *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). *Accord* 29 U.S.C. § 1002(21)(A). Here, Plaintiffs do not refute that: (1) the Hospital, as authorized by the Plan (ECF 42-3, at §§ 11.02(b), 11.04(7)), delegated investment responsibility over the SVA and the qualified default investment alternatives (QDIAs) under the Plan to a registered investment manager; and (2) as of April 28, 2022, that investment manager had <u>sole</u> discretionary authority to develop, monitor, and make changes to the portfolio containing those QDIA funds. (ECF 42-5, pp. 42-43 at § 1.4.) While the Hospital retained a continuing duty to monitor the investment manager, *Valley Hosp. v. Asquith,* 2006 U.S. Dist. LEXIS 106177, at *9 (D.N.J. May 24, 2006), neither it nor the other Defendants had a corresponding duty to monitor the Plan investments. *Accord Grink v. Virtua Health, Inc.,* 2025 U.S. Dist. LEXIS 598600 (D.N.J. Dec. 3, 2025) (O'Hearn, J.) ;[7] *Perez v. WPN Corp.*, 2017 U.S. Dist. LEXIS 87530, at *32-33 (W.D. Pa. June 7, 2017); *Lowen v. Tower Asset*

---

17.) Rather, the facts in that case reflected that the annual disclosures that were provided did not contain sufficient data. *Id.* at *18.

[7] Contrary to Plaintiffs' contention, the fact that this Court in *Grink* advanced an argument that counsel for the parties apparently did not make in their briefs is irrelevant.

9

*Management, Inc.,* 829 F.2d 1209, 1219 (2d Cir. 1987); 29 U.S.C. §§ 1102(c)(3), 1105(d)(1); 29 C.F.R. § 2509.75-8, FR-14 Q&A. Defendants, thus, are not proper parties to Plaintiffs' ERISA § 404 claims.

Regardless of whether the Hospital, Committee, or Board had fiduciary status, the SAC is devoid of *nonconclusory* allegations supporting that any of the individual Board members had or exercised discretionary authority over any of the challenged investments or fees. As to them, fiduciary status is not implicated.[8]

Trying to avoid dismissal, Plaintiffs make false representations of fact relative to the Recordkeeping Agreement.[9] Apparently, Plaintiffs will say (or intentionally omit) whatever they want to get what they want. Their misrepresentations should not be condoned.

## III.    PLAINTIFFS' CLAIMS FAIL ON THEIR MERITS.

Plaintiffs, citing cases from other jurisdictions, argue that, at the pleading stage, they do not need to allege "facts that directly address the process by which the Plan was managed." (ECF 43, p. 28.) But for district courts to "weed out" meritless,

---

[8] *Accord Luense*, 541 F. Supp. 3d at 509; *Alas v. AT&T Inc.,* 2019 U.S. Dist. LEXIS 46211, at *12 (C.D. Cal. Feb. 25, 2019); *Daly v. W. Monroe Partners, Inc.,* 2023 U.S. Dist. LEXIS 43481, at *15 (N.D. Ill. Mar. 15, 2023).

[9] Plaintiffs, for example, represent that the Plan is a party to the Recordkeeping Agreement and that Committee has discretion to restructure or reallocate participant accounts "[i]n the event that Morningstar recommends a change in a QDIA Portfolio." (*See* ECF 43, pp. 21-22.) Neither representation is true. (*See* ECF No. 42-5, pp. 2, 22, 25, 30, 32, 35, 38, 42, and 43 (at § 1.4(d)).

implausible, speculative claims that seek to second-guess the fiduciary process, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); the evaluation of prudence under ERISA must be "context specific." *Hughes*, 595 U.S. at 177. Plaintiffs have not shown that their allegations are context specific.

### A.    <u>Plaintiffs' Excessive Fee Claims Fail.</u>

Plaintiffs do not refute that their recordkeeping fee allegations, replete with "bare numbers" and nothing more, "do not raise an inference of imprudence[.]" *Grink,* 2025 U.S. Dist. LEXIS, at *34 (citation omitted). Plaintiffs, for example, have not accounted for differences in the services purchased, *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 188 (3d Cir. 2024), and have not identified meaningful benchmarks to show that the fees paid for those services were "higher than those paid by similar plans for the same services[,]" *Seibert v. Nokia of Am. Corp.,* 2023 U.S. Dist. LEXIS 137621, at *34-35 (D.N.J. Aug. 8, 2023) (citation omitted). While Plaintiffs challenge, in conclusory fashion, "Defendants'" alleged failure to solicit bids, they ignore that an alleged failure to conduct a request for proposal, without more, does not evidence imprudence. *See Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 U.S. Dist. LEXIS 160112, at *24 (S.D.N.Y. Sep. 18, 2019). ("ERISA does not require plan fiduciaries to obtain competitive bids from plan service providers.").

Plaintiffs separately fail to address that the Plan's Form 5500s contradict their calculations of Lincoln's recordkeeping fees as alleged in the SAC. (ECF 42-1, p.

31 n.31.) Their "assumption that [Lincoln's] recordkeeping fees were excessive relative to the services rendered" is "a proposition that the Plaintiffs have not adequately alleged." *Singh v. Deloitte LLP,* 123 F.4th 88, 96 (2d Cir. 2024).

In any event, Plaintiffs' judicial admission that "[t]here is nothing *per se* imprudent about" the Plan's arrangement with Lincoln (ECF 39-1, ¶ 133) should be dispositive. That this Court, in *Grink*, dismissed virtually the same allegations that Plaintiffs make in the SAC relative to the SVA and the recordkeeping fees also should be dispositive. 2025 U.S. Dist. LEXIS at *33-35.

### B.    Plaintiffs' Claims Relative to "Underperforming" Funds Fail.

Plaintiffs challenge six exhibits to the Declaration of undersigned counsel that reflect public information relative to the funds they challenge in the SAC, including their respective stock prices, as disclosed in fact sheets, articles, and blogs published by reliable sources on the Internet of which district courts in this and other Circuits routinely have taken judicial notice.[10] The fact that Plaintiffs, in the SAC, quote from

---

[10] *See, e.g., In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1331 (3d Cir. 2002) ("stock price data compiled by the Dow Jones news service"); *Ieradi v. Mylan Lab., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) (stock prices reported by Quotron Chart Services); *Peters v. Del. River Port Auth. of Pa. and N.J.,* 16 F.3d 1346, 1356 n.16 (3d. Cir. 1994) (newspaper articles); *In re Intelligroup Securities Litig.,* 527 F. Supp. 2d 262, 273 (D.N.J. 2007) (stock price chart compiled by Yahoo! Finance); *Criss v. New Jersey,* 2010 U.S. Dist. LEXIS 11247, at *4 n.3 (D.N.J. Feb. 9, 2010) (data from crime news blog); *Kumar v. Kulicke & Soffa Indus., Inc.*, 2019 U.S. Dist. LEXIS 175867, at *9 n.9 (E.D. Pa. Oct. 9, 2019) (Yahoo! Finance stock price printout); *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir.

two such sources – the Investment Company Institute and Morningstar (*see* ECF 39-1, ¶ 82) – renders their challenge to these exhibits frivolous.

Even when championing the merits of their underperformance claims, Plaintiffs fall short. "Bare assertions of net expense ratios and average annual returns, devoid of any context or explanation regarding the methods by which these figures were calculated, renders any meaningful comparison impossible." *See, e.g., Fritton v. Taylor Corp.*, 2023 U.S. Dist. LEXIS 145940, at *25 (D. Minn. Aug. 21, 2023). But even if one of their alleged "comparators" truly was an appropriate benchmark, and even if it performed better than either of the two challenged funds over extended periods of time, "there is simply not enough in the [SAC] to infer that a reasonably prudent fiduciary would have" removed the funds from the investment menu.[11] *Davis v. Wash. Univ. in St. Louis,* 960 F.3d 478, 486 (8th Cir. 2020).

### C.   Plaintiffs' ERISA § 406(a) Allegations Are a Non-Starter.

As discussed above, *Sweda* forecloses Plaintiffs' ERISA § 406(a) claims. So, too, does the "guaranteed benefit policy exemption" recognized in *Mack Boring & Parts v. Meeker Sharkey Moffitt, Actuarial Consultants of N.J.*, 930 F.2d 267, 276

---

2005) (data from website of National Association of Securities Dealers, Inc.); *In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 627 (S.D.N.Y. 2008) (company "press releases and analyst call transcripts, academic literature, and analyst reports").

[11] Plaintiffs, for example, do not address the fact that their underperformance allegations are "impermissibly hindsight-based." *Patterson v. Morgan Stanley,* 2019 U.S. Dist. LEXIS 174832, *35 (S.D.N.Y. Oct. 7, 2019).

(3d Cir. 1991). That exemption holds that because spread represents a carrier's earnings generated from its general account assets held pursuant to insurance contracts, like the SVA here, they are <u>not</u> plan assets under ERISA. 29 U.S.C. § 1101(b)(2). *Accord Bishop-Bristol*, 2019 U.S. Dist. LEXIS 61903, at *12-13. The exemption applies where the contracts "allocate[s] investment risk to the insurer[,]" *John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank,* 510 U.S. 86, 106 (1993), just as the crediting rate component of the SVA does here.[12]

Because the exemption appears on the face of the SAC, *Cunningham v. Cornell Univ.,* 604 U.S. 693 (2025), is inapposite. The adequate consideration exemption there (ERISA § 408) did not appear on the face of the complaint; rather, it was an affirmative defense that plaintiff did not have to negate. *Id.* at 702. Here, the SAC incorporates the exemption by reference and, thus, Plaintiffs were required to negate it. *Accord Clean Air Council v. United States Steel Corp*., 4 F.4th 204, 211 (3d Cir. 2021). Their failure to do so requires dismissal of the SAC with prejudice.

## IV.    CONCLUSION

For the reasons discussed above and in their Motion to Dismiss, Defendants request that the Court dismiss the SAC with prejudice and award them a reasonable attorney fee and costs under ERISA § 502(g).

---

[12] Lincoln guarantees the return to the participant and assumes any uncertainty and risk of loss. (*See* ECF 42-6.)

Dated: April 8, 2026

Respectfully submitted,

**O'HAGAN MEYER PLLC**

_____
Kevin L. Golden, Esquire
NJ Attorney I.D. No. 029462004
1717 Arch Street, Suite 3910
Philadelphia, PA 19102
215-461-3300
kgolden@ohaganmeyer.com

Joelle C. Sharman, Esquire
*Admitted Pro Hac Vice*
3500 Lenox Road, Suite 1500
Atlanta, GA 30326
470.973.6401
jsharman@ohaganmeyer.com

Michael S. Metta, Esquire
*Admitted Pro Hac Vice*
140 Kendrick Street, Bldg. C.
Needham, MA 02494
617-843-6817
mmetta@ohaganmeyer.com

*Attorney for Defendants, The Valley Hospital, the Board of Trustees of The Valley Hospital and The Valley Hospital Plan Committee*

15

## **CERTIFICATE OF SERVICE**

I, Kevin L. Golden, hereby certify that on this 8th day of April, 2026, I caused a true and correct copy of the foregoing, to be filed and available to all counsel of record via ECF.

**O'HAGAN MEYER PLLC**

_____
Kevin L. Golden